UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOLDBERG & ASSOCIATES, PC,
NADER HAMADE, and JULIE GOLDBERG,

|  |  |
|---|---|
| Plaintiffs, | Case Number 22-11277 |
| v. | Honorable David M. Lawson |

ALLEN BAYDOUN,

Defendant.

_____/

## OPINION AND ORDER DENYING MOTION TO DISMISS

The plaintiffs brought this action to recover money allegedly entrusted to the defendant to purchase automobiles for a nonprofit agency, which was diverted to his own use. Two other defendants were included in the original complaint, and the plaintiff reached a settlement with them. Subject-matter jurisdiction is based on diversity of citizenship. Remaining defendant Allen Baydoun has filed a motion to dismiss the case for want of jurisdiction, contending that the amount in controversy does not meet the statutory threshold. The Court heard oral argument on April 21, 2026. Because the plaintiff has alleged facts from which a reasonable factfinder can conclude that the amount in dispute exceeds $75,000, the defendant's motion will be denied. However, the plaintiffs will be directed to file an amended complaint to clarify the parties' citizenship.

I.

This case arises from an automobile purchase agreement gone wrong. According to the complaint, in June 2021, plaintiffs Goldberg & Associates, P.C., Julie Goldberg, and Nader Hamade sought to purchase three vehicles from C&A Auto Care, LLC, a car dealership based in Michigan and owned by former defendant Ali Chamas. Defendant Allen "Ali" Baydoun and his former codefendant, Mohamed Kaouk, were employees of C&A.

The plaintiffs alleged in the complaint that they agreed to pay $59,875.00 to the defendants to purchase three vehicles.  Compl., ¶27.  The total purchase price was increased to $60,780.00 after the defendants charged $900 in "dealer's fees" and kept an additional $5 that erroneously was included in the bag of cash provided by the plaintiffs.  *Id.* at ¶¶31, 42.  The defendants agreed to acquire the three vehicles from Manheim, a third-party vendor, upon receipt of the payment and deliver the vehicles to the plaintiffs.  *See id.* at ¶¶2, 21.

On June 24, 2021, Ms. Goldberg tendered a cash payment for the vehicles to Kaouk at her law firm's offices in California.  *Id.* at ¶¶24, 30.  Sometime later, Kaouk took the bag of money to the parking lot of the Michigan Secretary of State's office in Inkster, Michigan, where he met with Baydoun.  *Id.* at ¶35.  Baydoun provided two receipts for the vehicles and claimed that he was unable to print a third because the "limit was reached for C&A's Manheim account."  *Id.* at ¶36.  This "limit" apparently refers to C&A's credit limit with Manheim for purchasing vehicles, which only was $30,000.  *See id.* at ¶53.  After counting up the money together in Kaouk's car — allegedly at Kaouk's insistence, so that Baydoun "wouldn't later attempt to claim that it was short" — Baydoun took the money.  *Id.* at ¶¶39-40.

Later that day, Baydoun called Ali Nabul Nabi, his and Kaouk's mutual acquaintance. During the call, he referred to Kaouk as "stupid Mohamad" because Kaouk had given him the $60,000 payment.  *Id.* at ¶46.  Then, at a party that night, non-party Ali Beydoun (whose name is similar to that of defendant Baydoun) overheard defendant Baydoun saying that the purchase of two of the cars had gone through, but he was going to keep the money for the third car.  *Id.* at ¶51. He also said he would tell Kaouk the next day that he had only received money for two cars and Kaouk was "going to scream."  *Ibid.*  In another conversation with former defendant Chamas,

Baydoun called plaintiffs Goldberg and Hamade "stupid" because they had given him the full payment when he only had provided receipts for two cars. *Id.* at ¶52.

The plaintiffs allege further that non-party Ali Baydoun gave defendant Baydoun a ride home that night, during which defendant Baydoun again stated that he intended to keep the money for one of the cars. *Id.* at ¶53. He claimed that a "higher power" wanted him to have the money, that Kaouk had owed him, and that Kaouk was "in the line of fire so he will be forced to pay it." *Id.* at ¶¶53-54.

Ultimately, the defendants never provided any of the vehicles to the plaintiffs or returned the $60,780.00 payment for the vehicles. *Id.* at ¶6. Based on vehicle title records, the plaintiffs believe that C&A came into possession of two of the vehicles, but the fate of the third vehicle remains a mystery. *Id.* at ¶¶59-60. The plaintiffs allege that the defendants "had no intention of providing the vehicles to [them], due to a personal, and completely unrelated, dispute between C&A's employees, Mr. Baydoun and Mohamed Kaouk." *Id.* at ¶3.

The plaintiffs filed their complaint in June 2022, asserting claims against all defendants for statutory conversion under Michigan Compiled Laws § 600.2919a, common-law conversion, breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and fraud. C&A and Chamas filed crossclaims for indemnity against Baydoun and Kaouk. A default was entered against Baydoun in October 2022.

After some discovery, extended negations, and an unsuccessful attempt at arbitration, the plaintiffs settled the case with all defendants except for Baydoun. The Court entered an order dismissing the claims against C&A, Chamas, and Kaouk, ECF No. 64, and a separate order dismissing C&A and Chamas's crossclaims, ECF No. 72. Baydoun moved to set aside the Clerk's entry of default in July 2025, and the Court granted the motion. ECF No. 84.

The only remaining defendant in the case is Baydoun.  He now moves to dismiss the case for lack of subject matter jurisdiction, arguing that the plaintiffs impermissibly have "aggregated" their claims against him with the claims against the other defendants in order to meet the jurisdictional threshold.  He reasons that especially with the settlement with the other defendants, the amount in controversy does not meet the jurisdictional threshold in 28 U.S.C. § 1332.

II.

Baydoun invokes Federal Rule of Civil Procedure 12(b)(1), which allows a party to seek dismissal of a complaint for "lack of subject-matter jurisdiction."  "A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction can raise facial or factual attacks."  *W6 Rest. Grp., Ltd v. Loeffler*, 140 F.4th 344, 349 (6th Cir. 2025).  "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction," while a factual attack "challenges the factual existence of subject matter jurisdiction."  *Ibid.* (quoting *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014)).  Baydoun argues that the complaint itself does not plead facts adequately to allege the proper amount in controversy, so the motion must be considered as a facial attack.  "[W]hen considering a facial attack, the court treats the facts alleged in the complaint as true."  *Ibid.*

Federal courts have jurisdiction to hear cases based upon diversity of citizenship where the parties are citizens of different states and the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009).  To dismiss a complaint for failure to plead the amount in

- 4 -

controversy, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *GVN Mich.*, 561 F.3d at 628 (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 289). It is legally certain that the plaintiff cannot recover the alleged damages if "the applicable law limits or bars the damages" or if "it is clear from the face of the pleadings that the claim fails as a matter of law." *Charvat v. NMP, LLC*, 656 F.3d 440, 447 (6th Cir. 2011) (cleaned up). "Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury Indem.*, 303 U.S. at 289-90. However, the complaint may be dismissed at any time if the Court concludes that "the amount alleged in the complaint was never recoverable in the first instance." *GVN Mich.*, 561 F.3d at 628. The party requesting the federal forum bears the burden of proving that the requirements of diversity jurisdiction are satisfied. *Siding & Insulation Co. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 369 (6th Cir. 2014) (citations omitted).

Baydoun's main argument is that the claims asserted against him individually do not amount to $75,000 in damage exposure. He gives two apparent reasons for that conclusion: to meet the jurisdictional threshold, the plaintiffs impermissibly have "aggregated" their claims against him with the claims against the other defendants, failing to allege specific damages as to him alone; and the plaintiffs do not state a plausible claim against him for conversion because the events described in the complaint suggest that Baydoun wronged Kaouk, rather than the plaintiffs, by leaving Kaouk "holding the bag" for Kaouk's failure to deliver the cars for the plaintiffs. Baydoun relies on *Snyder v. Harris*, 394 U.S. 332 (1969), and *Zahn v. Int'l Paper Co.*, 414 U.S. 291 (1973), both cases where the plaintiffs attempted to aggregate "separate and distinct" claims to meet the jurisdictional minimum.

A.

The plaintiffs allege in the complaint that they were cheated out of $60,780, obviously less than the required $75,000 jurisdictional minimum. *See* 28 U.S.C. § 1332(a) (conferring jurisdiction on federal courts in civil cases "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"). However, they have pleaded a claim for statutory conversion under Michigan law, which allows a plaintiff to "recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees." Mich. Comp. Laws § 600.2919a. The plaintiffs have asked for treble damages in their complaint. ECF No. 1, PageID.12-13. Statutory damage multipliers may be considered when calculating the amount in controversy for jurisdictional purposes, provided that the allegations are made in good faith. *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943); *Adelman's Truck Parts Corp. v. Jones Transp.*, 797 F. App'x 997, 1000 (6th Cir. 2020) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990)).

Baydoun argues, however, that this legal truism does not help the plaintiffs because the statutory conversion claim is wanting. A successful amount-in-controversy challenge requires the challenger to show that "it is apparent, to a legal certainty, that the plaintiff[s] cannot recover" an amount greater than or equal to the jurisdictional minimum. *St. Paul Mercury*, 303 U.S. at 289; *GVN Mich.*, 561 F.3d at 628. Ordinarily, the "legal certainty" test does not permit extensive scrutiny of the merits of the plaintiff's claims. "The test for whether the jurisdictional amount has been met considers whether the plaintiff can succeed on the merits in only a very superficial way." *Kovacs v. Chesley*, 406 F.3d 393, 396 (6th Cir. 2005). However, the challenger can show a "legal certainty" that the amount in controversy cannot be recovered if "the applicable state law bar[s] the *type of damages* sought by the plaintiff." *Ibid.* (quoting *Wood v. Stark Tri-Cnty. Bldg. Trades*

*Council*, 473 F.2d 272, 274 (6th Cir. 1973)).  In *Parmelee v. Ackerman*, for instance, the court held that claimed damages for "embarrassment and mental suffering" could not be considered as part of the amount in controversy because "under Ohio law, recovery was only permitted for intentionally caused emotional distress, and the plaintiffs had not alleged any intentional acts." *Id.* at 396-97 (citing *Parmelee v. Ackerman*, 252 F.2d 721, 722 (6th Cir.1958)).  "Additionally, in some circumstances, a pleaded claim may not be used to satisfy the amount-in-controversy requirement if it is clear from the face of the pleadings that the claim fails as a matter of law." *NMP, LLC*, 656 F.3d at 447 (cleaned up).

Baydoun contends that the plaintiffs cannot rely on the conversion statute's damage trebling feature to boost the damages over the $75,000 threshold because that claim under Michigan law is defective.  The statute states:

> A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

Mich. Comp. Laws § 600.2919a(1).

A claim for statutory conversion requires the plaintiff to satisfy the elements of common-law conversion and then show that the defendant converted the property for his "own use." *In re Romanzi*, 31 F.4th 367, 381 (6th Cir. 2022).  Common-law conversion is defined as a "distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Ibid.* (quoting *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 346, 871 N.W.2d 136, 141 (2015)).  A defendant converts property to his "own

use" if he "employ[s] the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Ibid.* (quoting *Aroma Wines*, 497 Mich. at 361, 871 N.W.2d at 149).

The plaintiffs' claim for "conversion" of the funds the defendants allegedly misappropriated is questionable. "To support an action for conversion of money, the defendant must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship and must have had an obligation to return the specific money entrusted to his care." *Lawsuit Fin., LLC v. Curry*, 261 Mich. App. 579, 591, 683 N.W.2d 233, 240 (2004) (internal quotation marks omitted). "It is clear that when the dispute is over moneys owed, conversion is only applicable in cases involving money that is the property of one party but held by another party (e.g., bank accounts, trusts, etc.) which is then wrongfully taken." *Sudden Serv., Inc. v. Brockman Forklifts, Inc.*, 647 F. Supp. 2d 811, 815 (E.D. Mich. 2008) (collecting cases); *see also Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, No. 05-CV-73709-DT, 2007 WL 2710113, at *10 n.18 (E.D. Mich. Sept. 13, 2007) ("[W]here the defendant is obligated to return an amount of money equal to the amount of money that he took, as opposed to the specific, identifiable money that he took, an action for conversion will not lie."). The complaint here does not allege that the defendants were holding the funds for the benefit of the plaintiffs with an obligation to return the same identifiable moneys. Rather, the defendants allegedly refused to provide a refund of the purchase price for the cars after failing to perform under the acquisition agreement. Although that conduct may support a claim for breach of contract, it may not constitute conversion and therefore would not be a basis for treble damages under section 600.2919a(1).

However, the Michigan statute also authorizes treble damages for "stealing," which is distinct from conversion. *Shiffman v. Auto Source Wholesale, LLC*, No. 339291, 2018 WL

3863471, at *2 (Mich. Ct. App. Aug. 14, 2018).  The Michigan Court of Appeals has construed the meaning of "stealing" in the statute to encompass taking property by false pretenses — that is, "knowingly obtaining title to another person's personal property by misrepresenting a fact with the intent to defraud."  *Id.* at *4 (quoting Black's Law Dictionary (10th ed)); *see also In re DuMouchelle*, 667 B.R. 122, 137 (Bankr. E.D. Mich. 2023) ("Consistent with the majority opinion in *Shiffman*, this Court concludes that the phrase 'stolen property' as used in MCL 600.2919a is broad enough to include money obtained through false pretenses."), *report and recommendation adopted*, 663 B.R. 349 (E.D. Mich. 2024).  The complaint here alleges that the defendants induced the plaintiffs to pay them money based upon the defendants' false representations that they would use the funds to purchase and then deliver the vehicles to the plaintiffs.  Compl., ¶¶1-3, 94.  Those allegations describe a taking of property by false pretenses, which amounts to "stealing" under Michigan law.  Although it might be more accurate for the plaintiffs to describe their theory as "statutory *stealing*" rather than "statutory *conversion*," *see Shiffman* 2018 WL 3863471, at *2, the complaint describes a set of facts for which treble damages could be available under Michigan Compiled Laws § 600.2919a(1).  If the plaintiffs succeed on this claim, they could be entitled to treble their alleged actual damages of $60,780 and thereby exceed the jurisdictional threshold.  Therefore, the enhanced damages sought are not barred under state law, *Kovacs*, 406 F.3d at 396, and it is no legal certainty that the damages cannot be recovered.

Nevertheless, Baydoun argues that the complaint fails to state a claim for statutory conversion because it alleges that Baydoun wronged Kaouk, rather than the plaintiffs.  According to Baydoun, the complaint in substance alleges that Baydoun "double-cross[ed]" Kaouk by failing to deliver the three vehicles, leaving Kaouk "holding the bag."  ECF No. 85, PageID.1316.  It is fair to read the complaint to mean that Baydoun was motivated to keep the funds based on his

animosity toward Kaouk, and that Baydoun expected Kaouk to be responsible for the failure to deliver the vehicles. *See* Compl. ¶¶45-58. But that does not make Baydoun any less a target of the plaintiffs' theft claim. And it does not undermine the claim for statutory damages. The statute imposes liability for knowingly "receiving . . . stolen, embezzled, or converted property." Mich. Comp. Laws § 600.2919a(1)(b). For the reasons already discussed, the $60,780 that the plaintiffs paid easily could be considered "stolen" within the meaning of the statute. The defendants allegedly took the funds under false pretenses, and the complaint alleges that Baydoun took possession of those allegedly stolen funds. Even if Baydoun harbored an intention to harm Kaouk, he could be held liable for receiving "stolen" funds under section 600.2919a(1)(b) based on the allegations in the complaint.

Baydoun has not shown to a legal certainty that the complaint's allegations fail to establish an amount in controversy less than $75,001.

B.

Baydoun maintains that even if the amount in controversy is found to be over $75,000 generally, the complaint does not support diversity jurisdiction because the plaintiffs were required to allege the amount in controversy that is attributable to him specifically. Baydoun has not cited any authority to support that novel argument. He insists that *Snyder* and *Zahn* say that "[t]here is [diversity] jurisdiction over an individual defendant only if the amount in controversy exists for that specific defendant." ECF No. 85, PageID.1319. But neither case says that. *Snyder* held that plaintiffs in a class action case could not satisfy the amount-in-controversy requirement by aggregating "separate and distinct claims" that would not meet the amount in controversy requirement if pled separately. *Snyder*, 394 U.S. at 335 ("The traditional judicial interpretation under all of these statutes has been from the beginning that the separate and distinct claims of two

- 10 -

or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement."). *Zahn* held that plaintiffs who were unable to meet the amount in controversy requirement individually could not invoke federal jurisdiction by combining their claims with those of plaintiffs whose claims exceeded the amount in controversy requirement. *Zahn*, 414 U.S. at 301 (stating that "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case"), *superseded by statute as recognized in Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). Neither case says that a plaintiff must specify in the complaint the amount of damages attributable to each defendant acting in concert in order to satisfy the amount in controversy requirement.

Moreover, the anti-aggregation rule discussed in *Snyder* and *Zahn* cannot apply here because the plaintiffs do not seek to aggregate "separate and distinct" claims against the defendants. *See Snyder*, 394 U.S. at 335. A plaintiff may "aggregate" claims against multiple defendants where the defendants are jointly liable for the same conduct. *Fechheimer Bros. Co. v. Barnwasser*, 146 F.2d 974, 976 (6th Cir. 1945). Here, the count for statutory conversion alleges a single injury — the loss of the plaintiffs' money — for which all of the defendants are alleged to be responsible. The damages for this single injury are the proper measure of the amount in controversy, and no aggregation is required. *See Bou-Assaly v. George P. Mann & Assocs., P.C.*, No. 17-10007, 2017 WL 2734275, at *4-5 (E.D. Mich. June 26, 2017) (holding that "the entirety of damages sustained by [the] plaintiff are properly considered in determining the amount in controversy" in case where multiple tortfeasors caused a "single indivisible injury").

From the plaintiffs' side, the anti-aggregation rule does not bar the collective pleading of claims against the defendants. Count I of the complaint does not aggregate multiple separate and distinct claims, so the rule against aggregation does not apply. But even if it did, "[a]ggregation

has been permitted . . . in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder*, 394 U.S. at 335. The plaintiffs here assert that the money paid for the vehicles was provided by them collectively, apparently for the purpose of a charity in which they all are involved. *See* Compl. ¶7. Therefore, a lawsuit to recover the funds lost in the transaction would vindicate their common and undivided interest in the funds, and the plaintiff-anti-aggregation rule does not apply.

The complaint satisfies the amount-in-controversy requirement of 28 U.S.C. § 1332(a).

C.

It appears that since the case was filed, the plaintiffs reached a settlement with all of the defendants except for Baydoun, evidently based upon Chamas's agreement to pay $75,000. *See* Proposed Final Judgment, ECF No. 65-3, PageID.943-44. Baydoun does not suggest that the settlement affects the amount in controversy, and with good reason. The amount in controversy is assessed at the time of the filing the complaint and is not affected by subsequent events. *GVN Mich.*, 561 F.3d at 628 ("Generally, the amount [in controversy] claimed by the plaintiff in the complaint rules, as long as claimed in good faith, and '[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.'" (quoting *St. Paul Mercury*, 303 U.S. at 289)). Accordingly, the amount in controversy alleged in the complaint is not affected by Chamas's payments, even if they ultimately may reduce the total amount recoverable by the plaintiffs.

D.

Finally, the Court observes that the allegations in the complaint do not allege the citizenship of the parties adequately. Federal courts have jurisdiction to hear cases based upon diversity of citizenship where the parties are citizens of different states. 28 U.S.C. § 1332(a). "Diversity of

- 12 -

citizenship . . . exists only when no plaintiff and no defendant are citizens of the same state." *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006) (citation and quotation marks omitted). "[C]itizenship for purposes of 28 U.S.C. § 1332(a) means domicile rather than residence." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973) (citations omitted). The Sixth Circuit has made clear that residence and domicile are distinct concepts:

> Generally, an individual's "domicile" is his "true, fixed, and permanent home and principal establishment." It is the place to which he returns whenever he is absent. "Residence," in contrast, requires both physical presence and an intention to remain some indefinite period of time, but not necessarily permanently. Thus, domicile is an individual's permanent place of abode where he need not be physically present, and residence is where the individual is physically present much of the time. An individual consequently may have several residences, but only one domicile.

*Eastman v. Univ. of Michigan*, 30 F.3d 670, 672-73 (6th Cir. 1994) (internal citations omitted). Federal courts "deem[] a corporation to have the citizenship of its state of incorporation and its principal place of business." *Safeco Insurance Co. of America v. City of White House, Tenn.*, 36 F.3d 540, 544 (6th Cir. 1994) (citing 28 U.S.C. § 1332(c)(1)).

Baydoun's motion does not dispute that the parties are completely diverse as required by 28 U.S.C. § 1332(a). However, federal courts have an independent obligation to police their own subject matter jurisdiction, *Siding & Insulation Co.*, 754 F.3d at 368-69 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)), and the complaint's allegations are insufficient to establish complete diversity of citizenship among the parties. The complaint alleges that Goldberg & Associates, P.C., is a California corporation and that the two individual plaintiffs "reside[]" in California. Compl., ¶¶13-15. Meanwhile, Baydoun — the only defendant remaining in the case — allegedly "resides" in Michigan. *Id.* at ¶17. The allegations that the individual parties "reside" in separate states do not establish complete diversity because residence does not equal citizenship under section 1332(a). *Stifel*, 477 F.2d at 1120.

There is little doubt here that the individual parties are citizens of separate states.  However, because words matter, the plaintiffs must file an amended complaint to shore up the citizenship allegations.

III.

The complaint adequately pleads an amount in controversy that satisfies the jurisdictional threshold required by 28 U.S.C. § 1332(a).  However, the allegations of citizenship are insufficient.

Accordingly, it is **ORDERED** that the plaintiff must file an amended complaint **on or before May 29, 2026** that addresses the citizenship of the parties.

It is further **ORDERED** that the defendant's motion to dismiss the complaint based on the amount-in-controversy allegations (ECF No.85) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   May 15, 2026

- 14 -